USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8/20/18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MIGUEL ELI RAMIREZ PEREZ,

Petitioner,

-against-

THOMAS DECKER, in his official capacity as New York City Field Office Director, U.S. Immigration and Customs Enforcement; DIANE MCCONNELL, in her official capacity as Assistant New York City Field Office Director, U.S. Immigration and Customs Enforcement; CARL E. DUBOIS, in his official capacity as Sheriff, Orange County Correctional Facility; KIRSTJEN NIELSEN, in her official capacity as Secretary, U.S. Department of Homeland Security; JEFFERSON SESSIONS, in his official capacity as Attorney General, U.S. Department of Justice;

Respondents.

18-CV-5279 (VEC)

ORDER AND OPINION

VALERIE CAPRONI, United States District Judge:

Petitioner Miguel Eli Ramirez Perez ("Ramirez" or "Petitioner") moves pursuant to 28 U.S.C. § 2241 for a writ of habeas corpus, challenging his civil detention without a bond hearing. Petition ("Pet.") [Dkt. 1]. He is currently being held pursuant to the Government's immigration authority under 28 U.S.C. § 1225(b)(2)(A). *Id.* ¶¶ 3, 7. For the reasons discussed below, the Court grants Petitioner's request and orders that the Government release him or provide him a bond hearing.

## I. BACKGROUND

### A. Factual Background and Procedural History[1]

Petitioner is a 21-year-old Guatemalan citizen who was reared in the indigenous Ixil community. Pet. ¶ 26. He left Guatemala in 2017 because of harassment by gang members, who targeted Petitioner and his family because his father lived in the United States and sent remittances back to Guatemala. *Id.* ¶¶ 26–27. Ramirez was forced into hiding, unable to continue his education, and, in the fall of 2017, the gang attacked his brother. *Id.* ¶ 27. After the assault, Ramirez fled to the United States and presented himself at the U.S. Border in El Paso, Texas around November 20, 2017. *Id.* ¶¶ 28–29.

Ramirez was initially classified as a juvenile and placed in the custody of the Office of Refugee Resettlement. Pet. ¶ 30. On January 19, 2018, when the Government discovered that he was older than originally believed, he was transferred to the custody of the Department of Homeland Security ("DHS") and has been held in jail ever since. *Id.* ¶¶ 30, 39. *See also* Declaration of Deportation Officer Erika Marino ("Marino Decl.") [Dkt. 9] ¶¶ 3–8. The Government formally commenced removal proceedings on January 24, 2018. Marino Decl. ¶ 12. Petitioner first appeared before an Immigration Judge ("IJ") at the Varick Street Immigration Court on February 21, 2018, at which he received *pro bono* counsel. Pet. ¶ 32. At that time, his attorney asked for a brief adjournment to March 13, 2018, so she could investigate the matter and prepare the case. *Id.*; Marino Decl. ¶ 13.

At the March 13, 2018, hearing, the IJ had technical issues with the telephonic interpreter, and delays caused by the court's calendar left the Ixil interpreter with only a few minutes to assist. Pet. ¶ 33. The IJ directed Petitioner's counsel to submit written pleadings,

---

[1] The Court assumes the truth of the allegations contained in the Petition.

accepted Petitioner's asylum application, and scheduled a merits hearing for July 20, 2018. *Id.* ¶ 34. *See also* Marino Decl. ¶ 14.[2]

On March 14, 2018, Petitioner requested humanitarian parole pursuant to 8 U.S.C. § 1182(d)(5)(A) while his claim for asylum was pending. Pet. ¶ 36. The parole request was denied on March 22, 2018 in a brief one-page letter. *Id.* ¶ 38; Ex. E to Pet. [Dkt. 1-5]. *See also* Marino Decl. ¶ 16. Also on March 14, 2018, Ramirez admitted the allegations and conceded the charge in the Notice to Appear ("NTA"). Marino Decl. ¶ 15.

On July 2, 2018, Ramirez moved to continue the July 20, 2018 hearing due to his inability to procure an Ixil interpreter. Declaration of Carmen I. Rodriguez-Arroyo ("Rodriguez Decl.") [Dkt. 11-1] ¶ 7; Marino Decl. ¶ 17. Petitioner's counsel subsequently located an Ixil interpreter and prepared for the merits hearing. Rodriquez Decl. ¶ 7. Although Petitioner's motion for a continuance was not granted,[3] the IJ nevertheless canceled the July 20 hearing because the court did not have an Ixil interpreter available. *Id.* ¶¶ 7–8. Petitioner was produced neither physically nor by video-teleconference at the hearing. *Id.* ¶ 9. The merits hearing was then adjourned for over three months, to October 26, 2018. *Id.* ¶ 10. Petitioner's counsel has represented that she intends to try to advance the date, but she is not optimistic given the backlog of cases before the immigration court. *Id.* ¶ 14.

At the time this Petition was filed, Ramirez believed that he would be held until at least July 20, 2018, the date of his then-scheduled merits determination, which would have been more

---

[2] Petitioner's asylum application is "based on fear of future persecution on account of his anti-gang religious views and political opinion, and because he is a member of [a family] targeted for extortion by gang members due to perceived socio-economic status as recipients of remittances from the United States [as well as] a history of government-instigated persecution and pervasive discrimination against the Ixil population in Guatemala." Pet. ¶ 35.

[3] The Rodriguez Declaration is ambiguous as to whether the motion was denied or just not acted on, although the Declaration's use of "never granted" suggests the latter. *See* Rodriguez Decl. ¶ 7.

than eight months after his detention began. Pet. ¶ 39. He has currently been held approximately nine months and, by the time of his rescheduled merits hearing in late October 2016, Petitioner will have been detained for almost a year. Rodriguez Decl. ¶ 10.[4] Ramirez's counsel further believes that, if the merits hearing's result is appealed, his detention may continue for several more months. *Id.* ¶ 15.

Ramirez contends that he has never been arrested on criminal charges, been convicted of a crime, harmed another person, or been affiliated with a violent or terrorist group. Pet. ¶ 41. Nonetheless, the conditions of his detention are identical to those of individuals in criminal custody; he is transported in handcuffs, with his hands shackled to a chain around his waist. *Id.* The facility in which he is currently detained affords him limited access to legal services and is a prison facility. *Id.*

**B. Statutory and Legal Background**

Section 1225(b) of Title 8, United States Code, sets forth procedures for the inspection and detention of individuals who are "applicants for admission" to the United States. *See* 8 U.S.C. § 1225(a)(1), (b). Such persons are sometimes referred to as "arriving aliens." *See* 8 C.F.R. § 1001.1 ("The term arriving alien means an applicant for admission coming or attempting to come into the United States at a port-of-entry . . . ."). Pursuant to § 1225(b)(2)(A), "if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a [removal] proceeding under section 1229a of this title."[5] The only statutory mechanism for release from § 1225(b)

---

4 Petitioner's asserted time frames are shorter than those set forth above because, for the first two months he was in the country, he was in the custody of the Office of Refugee Resettlement as a presumed juvenile. *See* Pet. ¶ 30. For purposes of assessing his Due Process rights, it does not matter whether those two months are considered "detention."

5 Individuals who present a credible fear of persecution are detained pursuant to § 1225(b)(1)(B)(ii) for consideration of their asylum applications. Although Petitioner expressed a fear of returning to Guatemala when he

custody is found in 8 U.S.C. § 1182(d)(5)(A). That provision permits the Attorney General, in his discretion, to parole temporarily into the United States individuals who are applying for admission for urgent humanitarian reasons or significant public benefit. *Perez v. Aviles*, 188 F. Supp. 3d 328, 331 (S.D.N.Y. 2016) (quoting 8 U.S.C. § 1182(d)(5)(A)). *See also* 8 C.F.R. § 212.5. (Petitioner's request for parole was denied. Pet. ¶ 38.) Section 1225(b) itself contains no limitation on the length of an individual's detention. *Sing Fon Pan v. Sessions*, 290 F. Supp. 3d 250, 253 (S.D.N.Y. 2018) (citing 8 U.S.C. § 1225(b)(2)(A)).

The Supreme Court recently decided that section 1225(b) cannot be construed to incorporate an implicit limit to the length of detention under, *inter alia*, § 1225(b)(2)(A), but left it to lower courts to determine whether lengthy detention would violate an individual's constitutional Due Process rights. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 842–51 (2018).

"It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Hernandez v. Decker*, No. 18-CV-5026 (ALC), 2018 WL 3579108, at *3 (S.D.N.Y. July 25, 2018) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)) (internal quotation marks omitted). "It is equally undisputed that freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that the Fifth Amendment's Due Process Clause protects." *Id*. (quoting *Zadvydas v.*

---

presented himself at the border, and although he now has an asylum application pending, *see* Pet. ¶¶ 29, 34, the parties agree that he is being held pursuant to § 1225(b)(2)(A). *See id*. ¶ 7, Respondents' Memorandum of Law in Opposition to the Petition for a Writ of Habeas Corpus ("Opp.") [Dkt. 10] at 6–7. The Court therefore accepts that Petitioner is being held pursuant to § 1225(b)(2)(A). The Court's conclusion would be the same even if Petitioner were held pursuant to § 1225(b)(1)(B)(ii) because, as also discussed in note 8 *infra*, such individuals also have Due Process rights not to be subjected to unreasonable detention: § 1225(b) contains no limitation on how long detention may last, whether pursuant to (b)(2)(A) or (b)(1)(B)(ii), and is thus indefinite. *See, e.g.*, *Birch v. Decker*, No. 17-CV-6769 (KBF), 2018 WL 794618, at *3 (S.D.N.Y. Feb. 7, 2018) ("[Section 1225(b)(1)(B)(ii)] provides no timeframe for completion of the administrative [asylum] process or for a bond hearing during the pendency of such process. . . . [I]ndefinite detention without a bond hearing is allowed, however long it may be.").

*Davis*, 533 U.S. 678, 690 (2001)). The amount of process owed to an individual in Petitioner's position is discussed further below.

## II. DISCUSSION

### A. Jurisdiction

The federal habeas corpus statute "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)). Under this provision, federal courts may hear claims by non-citizens challenging the constitutionality of their detention. *Demore v. Kim*, 538 U.S. 510, 516–17 (2003). The Government does not dispute that this Court has jurisdiction, pursuant to 28 U.S.C. §§ 2241 and 1331, to decide Ramirez's petition. *See* Opp.; *Hernandez*, 2018 WL 3579108, at *3.

### B. Individuals Detained Pursuant to 8 U.S.C. § 1255(b) Have Due Process Rights

The Court first addresses whether Petitioner, as a detainee held pursuant to § 1225(b), possesses Due Process rights on which he can base a challenge to his detention.

Petitioner contends that he has "fundamental due process protection [that] applies to all noncitizens present in the United States, including removable and inadmissible noncitizens." Pet. ¶ 43. *See also* Pet. ¶¶ 44–49; Petitioner's Reply in Support of Petition for Writ of Habeas Corpus ("Reply") [Dkt. 11] at 2–6. Although Petitioner recognizes that the "full scope of [his Due Process] rights may be an open question," he nonetheless argues that whatever minimal rights he has entitle him to a bond hearing. Reply at 2–4. The Government, on the other hand, argues that Petitioner does not have the right to a hearing; invokes the political branches' plenary

power over immigration at the country's border; and urges the Court not to upset Congress's scheme for managing prospective immigrants seeking admission.[6] Opp. at 7–13.

Courts disagree over whether individuals detained pursuant to § 1225(b) have Due Process rights and the extent of any such rights. Many courts, including this one,[7] have found that such individuals have Due Process rights that require courts to consider challenges to the length of their detentions, even if the detainees' rights are limited in other respects.[8] At least one

---

6 The Government also argues that, per *Jennings*, § 1225 contains no implicit time limit on mandatory detention. Opp. at 5–6. Petitioner agrees and does not contest this statutory argument. Reply at 1 n.2.

7 This Court previously found that individuals detained pursuant to § 1225(b) have Due Process rights and that those rights require an independent review of their detention. *See Osias v. Decker*, 273 F. Supp. 3d 504, 510 (S.D.N.Y. 2017), *vacated on other grounds*, No. 17-CV-02786 (VEC), 2017 WL 3432685 (S.D.N.Y. Aug. 9, 2017); *Morris v. Decker*, No. 17-CV-02224 (VEC), 2017 WL 1968314, at *4 (S.D.N.Y. May 11, 2017).

8 *See, e.g.*, *Birch*, 2018 WL 794618, at *6 ("As a threshold matter, it is clear that aliens detained on U.S. soil, regardless of whether they have been formally 'admitted' under § 1101(a)(13)(A), are entitled to some due process protection. That protection is undoubtedly diminished—both vis-à-vis citizens and immigrants who have effected an entry (legally or illegally)—but it nonetheless exists in some form."); *Alberto v. Decker*, No. 17-CV-2604 (PKC), 2017 WL 6210785, at *7 (S.D.N.Y. Nov. 21, 2017) ("Considering the circumstances of Alberto's case, the indefinite [§ 1225(b)] detention without a hearing is a deprivation of due process of law. . . . [H]e has been detained for an undue period of time (seven months) without a bond hearing."); *Nord v. Decker*, No. 17-CV-3679 (VSB), 2017 WL 6403884, at *3 (S.D.N.Y. Aug. 23, 2017) ("The Government's principal argument is that nonresident aliens arriving at the border have fewer constitutional protections than those present in the United States . . . . [But] the Government does not argue that nonresident aliens arriving at the border have no constitutional rights. . . . [T]he detention of an asylum-seeker such as Petitioner pursuant to Section 1225(b)(1)(B)(ii) for longer than six months without an individualized bond hearing violates due process.") (internal quotation marks and citation omitted).

*See also Shire v. Decker*, No. 1:17-CV-01984, 2018 WL 509740, at *3–4 (M.D. Pa. Jan. 23, 2018) (finding twenty-five month detention violated Due Process rights of petitioner detained pursuant to § 1225(b)(2)(A)); *Cruz v. Nalls-Castillo*, No. CV 16-1587 (MCA), 2017 WL 6698709, at *5 (D.N.J. Sept. 19, 2017) ("This Court also agrees that Petitioner has some procedural due process rights as an arriving alien held pursuant to § 1225(b)(2)(A)."); *Salazar v. Rodriguez*, No. CV 17-1099 (JMV), 2017 WL 3718380, at *6 (D.N.J. Aug. 29, 2017) ("[T]he Court finds that the Petitioner, being held as an arriving alien pursuant to § 1225(b)(2)(A), has some procedural due process rights.") (citations omitted).

Although some of the cited cases deal with individuals detained under § 1225(b)(1)(B)(ii) rather than § 1225(b)(2)(A), that distinction is of no moment because such individuals stand in the same position *vis-a-vis* entry into the United States: all are "applicant[s] for admission" pursuant to § 1225(a)(1). *Cf. Osias*, 273 F. Supp. at 510 ("[T]he same statute must be construed similarly as applied to all categories of immigrants captured under the statute.") (citing *Saleem v. Shanahan*, No. 16-CV-808 (RA), 2016 WL 4435246, at *4 (S.D.N.Y. Aug. 22, 2016)).

judge in this District has reached the opposite conclusion.[9] *See Poonjani v. Shanahan*, No. 17-CV-6066 (RJS), 2018 WL 3654781, at *3–5 (S.D.N.Y. July 25, 2018) (relying on *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206 (1953), to find that Due Process rights for individuals "on the threshold of initial entry" are defined by Congress's immigration statutes, which do not contemplate bond hearings for individuals held pursuant to § 1225(b)). *Poonjani* relied, however, on *Mezei*, a 1953 Supreme Court case that this Court has found "inapposite because the statutory scheme [it] considered . . . is no longer in force and effect; the category of 'excludable aliens' that was considered in *Mezei* was eliminated by the passage of the [Illegal Immigration Reform and Immigrant Responsibility Act of 1996], the statute implicated by [§ 1225] petition[s]." *Osias*, 273 F. Supp. 3d at 510 (citation omitted). *See also Nord*, 2017 WL 6403884 at *3 (quoting *Osias*, 273 F. Supp. 3d at 510).

This Court rejects the Government's arguments based on its powers and the Congressional scheme, as it has done twice before. *See Osias*, 273 F. Supp. 3d. at 511; *Morris*, 2017 WL 1968314, at *4–5. Any "plenary power" the political branches have over immigration "does not shield immigration laws from constitutional inquiry;" an immigration judge will decide whether and under what conditions, if any, Petitioner may be released. *Morris*, 2017 WL 1968314, at *4 (citation omitted). Nor does "the existence of a complex statutory scheme . . . alter core constitutional protections, [which] are violated by prolonged mandatory detention without a bond hearing." *Id*.

Most importantly, as other courts have found, § 1225(b) contains no limitation on how long detention may last, and therefore the duration of Petitioner's detention is indefinite. *See,*

---

9 Another judge in this District recently noted that a detainee held pursuant to § 1225(b)(2)(A) may have less robust Due Process rights than a detainee held pursuant to § 1226(c), but he did not definitively resolve the issue. *See Traore v. Ahrendt*, No. 18-CV-794 (JMF), 2018 WL 2041710, at *1 (S.D.N.Y. Apr. 30, 2018) (citation omitted).

*e.g.*, *Sing Fon Pan*, 290 F. Supp. 3d at 253 (citing § 1225(b)(2)(A)). But "[i]ndefinite, mandatory detention of any person on U.S. soil, regardless of immigration status, offends basic notions of fairness, justice, and liberty protected by the Fifth Amendment." *Birch*, 2018 WL 794618, at *7 (emphasis in original). Accordingly, as this and other courts have previously decided, individuals detained pursuant to § 1225(b) possess sufficient Due Process rights that they can challenge their mandatory, unreviewed detention.

**C. Petitioner's Detention Without a Bond Hearing Violates Due Process**

To evaluate the substance of Petitioner's claim, the Court finds helpful Judge Nathan's recent decision in a post-*Jennings* habeas case. This Court concurs with Judge Nathan that determining whether mandatory detention has become unreasonable "is a fact-dependent inquiry requiring an assessment of all the circumstances of any given case." *Sajous v. Decker*, No. 18-CV-2447 (AJN), 2018 WL 2357266, at *10 (S.D.N.Y. May 23, 2018) (quoting *Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 234 (3d Cir. 2011)). Judge Nathan derived a set of factors from Supreme Court decisions that have been "adopted by courts in this circuit and elsewhere when determining whether an alien's detention has become unreasonable."[10] *Id*. The primary factors are (1) the length of time the person has already been detained, with detention for more than six months being more likely to be unreasonable; (2) whether the person is responsible for the delay, with delay caused by immigration officials, the immigration court, or other governmental actors weighing in favor of finding continued detention unreasonable; and (3) whether the person has asserted defenses to removal, as it is less appropriate to presume an

[10] Although *Sajous* involved an individual detained pursuant to § 1226(c) rather than § 1225(b), *see* 2018 WL 2357266, at *10, the Court finds that the factors Judge Nathan set out are equally appropriate in the § 1225(b) context. As discussed above, individuals detained under § 1225(b) have the same Due Process right to not be subjected to unreasonable detention. Additionally, another court in this District utilized this set of factors in a recent opinion regarding the Due Process rights for a lawful permanent resident ("LPR") detained pursuant to § 1225(b)(2)(A). *See Brissett v. Decker*, No. 18-CV-2831-LTS, 2018 WL 3918186, at *5 (S.D.N.Y. Aug. 16, 2018).

individual with defenses will eventually be deported, and thus less reasonable to detain him without a bond hearing. *Id.* at *10–11 (citations omitted). Additional considerations may also apply, including whether the person's immigration detention is longer than any term of imprisonment he served for a crime that rendered him subject to removal (a factor not applicable in this case as Petitioner has not committed a crime that subjects him to removal) and "whether the facility for the civil immigration detention is meaningfully different from a penal institution for criminal detention." *Id.* at *11 (internal quotation marks and citations omitted).

Petitioner argues that his detention will likely extend until at least the date of his merits hearing in October 2018, by which time he will have been detained for almost a year. *See* Reply at 8.[11] He contends that the Government has been the cause of the delay by, *inter alia*, holding him for a month after he was transferred into immigration custody before scheduling his first court appearance, failing to procure an Ixil translator for his July 2018 merits hearing, and adjourning his merits hearing until late October 2018. *Id.* at 10. He also notes that his asylum application could provide a complete defense to his removal. Pet. ¶ 67.

The Government contends that Ramirez's detention serves a valid statutory purpose by ensuring his presence at his removal proceedings and securing his availability for removal. *See* Opp. at 14–15. The Government argues that his detention has not been unreasonably prolonged because Petitioner has availed himself of procedural safeguards that extended his detention, namely seeking two adjournments and challenging his removal; "[t]he passage of time in [the removal] proceedings reflects Ramirez's decision to utilize these protections, not a violation of

[11] Even using the shorter timeline that excludes the period of time during which Plaintiff was in the custody of the Office of Refugee Resettlement, he still will have been in custody for approximately nine months without a bail hearing at the time of his immigration hearing, which is also unreasonable.

due process." *Id*. at 15. Lastly, the Government points to cases in this District in which judges have found reasonable longer periods of detention. *Id*. at 16 (citations omitted).

To start, the Court rejects the Government's "statutory purpose" argument for the same reason it did in *Morris* and *Osias*: the central concern is with the length of Petitioner's detention without a bond hearing. *See Osias*, 273 F. Supp. 3d at 511; *Morris*, 2017 WL 1968314, at *5. The invocation of statutory purpose is of particular concern in the instant case, where Petitioner has no criminal history and appears to pose a low risk of flight. It is questionable whether detention is necessary to ensure his appearance in court and his availability for removal, and those concerns can, in any event, best be addressed in the context of a bond hearing.

Moving on to the other factors articulated by Judge Nathan and adopted here: Ramirez has been detained for more than nine months and will likely remain detained for several more absent an order from this Court. The length of detention has surpassed the rough six-month threshold at which detentions become less and less reasonable. Next, the Court finds that the bulk of the delay has been caused by the Government, contrary to the Government's perception of the situation. Although Petitioner's counsel was granted an adjournment of about three weeks to meet her client and to familiarize herself with his case, Petitioner's other requested adjournment was not granted, and he and his counsel were prepared to proceed at the scheduled July merits hearing. On the other hand, the Government failed to produce Ramirez for this key court appearance and failed to provide the necessary Ixil interpreter, prompting another three-month adjournment of the merits hearing. Third, Petitioner has made a claim for asylum that could be a defense to his removal, again tilting the scales toward his unreviewed detention being unreasonable. And while Petitioner did not serve a criminal sentence against which the Court might compare his detention, the conditions of his detention are largely identical to those of

criminal incarceration, including the location of his detention and the manner in which he is transported. In all, the relevant factors point to a finding that Petitioner's continued detention without a bond hearing is unreasonable.

The cases cited by the Government are inapposite. In *Hylton v. Shanahan*, there was "no evidence in the record to suggest that the immigration authorities [had] unreasonably prolonged [the petitioner's] removal proceedings and related detention;" to the extent there was a prolonged delay, it was largely due to the petitioner's various requests for additional time. *See* No. 15-CV-1243-LTS, 2015 WL 3604328, at *5 (S.D.N.Y. June 9, 2015). This was also the case in *Debel v. Dubois*, in which the petitioner sought "numerous continuances" and "[o]nly one five-week delay . . . was attributable to the Government." No. 13 CIV. 6028 LTS JLC, 2014 WL 1689042, at *6 (S.D.N.Y. Apr. 24, 2014). Similarly, in *Adler v. U.S. Department of Homeland Security*, "[e]very adjournment in [the] proceedings was upon [the petitioner's] motion." No. 09 CIV.4093 (SAS), 2009 WL 3029328, at *2 (S.D.N.Y. Sept. 22, 2009). While the petitioners in the remaining cases cited by the Government were held responsible for delays because they had appealed their removal orders,[12] this Court concurs with Judge Carter who found such cases unhelpful when considering the claim of a petitioner who, as here, had not yet received a removal order from the IJ, and noted further that "pursuit of relief from removal does not, in itself, undermine a claim that detention is unreasonably prolonged." *See Hernandez*, 2018 WL 3579108, at *8–9. The Court also notes that, notwithstanding the cases cited by the Government, Judges Nathan and Carter found detentions of eight and nine months, respectively, to be unreasonable. *See Hernandez*, 2018 WL 3579108, at *8; *Sajous*, 2018 WL 2357266, at *11.

---

[12] *See* Opp. at 16 (citing *Johnson v. Orsino*, 942 F. Supp. 2d 396, 408–11 (S.D.N.Y. 2013); *Johnson v. Phillips*, No. 10-CV-480 (HBS), 2010 WL 6512350, at *6–7 (W.D.N.Y. Dec. 20, 2010)).

In all, the Court finds that the duration of Petitioner's detention is at this point unreasonable and that his Due Process rights require him to be afforded him an individualized bond hearing.

**D. The Process and Procedure Due to Petitioner**

Petitioner argues that the Government should bear the burden of proof at his bond hearing, as has been the case with civil detention in other contexts, and that the Government should be required to present clear and convincing evidence that Petitioner presents a risk of flight or is a danger to the community. Pet. ¶¶ 57–59; Reply at 10–11. He also contends that his ability to pay and alternative conditions of release must be taken into account when setting his bond. Pet. ¶ 57. The Government asserts that placing this burden on the Government would be inappropriate, as it is inconsistent with the statutory scheme. Opp. at 16–17.

The Court again concurs with recent opinions from Judges Nathan and Carter. Both opinions concluded that "imposing a clear and convincing standard [on the Government] would be most consistent with due process." *Hernandez*, 2018 WL 3579108, at *10–11; *Sajous*, 2018 WL 2357266, at *12. In particular, the Court concurs with Judge Carter's analysis of the Ninth Circuit's opinions in *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011), and *Rodriguez v. Robbins*, 715 F.3d 1127 (9th Cir. 2013), and this Circuit's adoption of the Ninth Circuit's use of a clear and convincing standard in the immigration detention context. *Hernandez*, 2018 WL 3579108, at *10–11 (citing *Lora v. Shanahan*, 804 F.3d 601, 616 (2d Cir. 2015), *cert. granted, judgment vacated*, 138 S. Ct. 1260 (2018)). "The mere possibility of removal does not meaningfully distinguish immigration detention from other types of civil commitment, because civil commitment for any purpose constitutes a significant deprivation of liberty." *Id*. at *11 (quoting *Singh*, 638 F.3d at 1204) (internal quotation marks omitted). The Court also concurs with and

adopts Judge Carter's reasoning in finding that the Due Process Clause requires an IJ to consider alternatives to detention and a petitioner's ability to pay a bond. *Id*. at *12 (citations omitted).

## III. CONCLUSION

For the reasons discussed above, Ramirez's continued detention without a bond hearing violates his Due Process rights. Respondents are ordered to provide him with a bond hearing consistent with this Opinion by August 27, 2018, or to release him immediately. The Clerk of Court is instructed to close the case.

**SO ORDERED.**

**Date: August 20, 2018**
**New York, New York**

**VALERIE CAPRONI**
**United States District Judge**